ELIZABETH O. WAUGH, APPELLEE, v. HERBERT I. WAUGH, APPELLANT.

47 N. W. 2d 859

Filed May 11, 1951. No. 32963.

*Shrout, Brown & Thurmond,* for appellant.

*Young & Williams,* and *Kenneth B. Holm,* for appellee.

Heard before SIMMONS, C. J., CARTER, MESSMORE, YEAGER, CHAPPELL, WENKE, and BOSLAUGH, JJ.

CHAPPELL, J.

Plaintiff brought this action seeking an absolute divorce from defendant for specifically alleged extreme cruelty by personal violence and other means. Defendant filed an answer and cross-petition denying generally and seeking an absolute divorce from plaintiff upon similarly alleged grounds. On August 18, 1950, after hearing on the merits, the trial court found and adjudged the issues generally in favor of plaintiff upon her petition

and dismissed defendant's cross-petition. Defendant's motion for new trial was overruled, and he appealed, presenting for decision only the question of whether or not that part of the decree dividing the property was just and equitable. Upon trial de novo we modify the decree.

This court has held that: "In a divorce suit where the court has jurisdiction of the parties, it has power to adjust all their respective property interests.

"Upon the granting of an absolute divorce, the trial court has the legal right to assign the property, both real and personal, acquired during the marriage by the joint efforts of the parties, between the parties as the equities require." Sims v. Sims, 148 Neb. 771, 29 N. W. 2d 378. In such case this court also held: "A father usually continues to be liable for the support of his minor children to the same extent after the divorce as before, and provisions in a divorce decree for their suitable maintenance and support are entirely distinct from the allowances of specific alimony to the wife."

Only recently we also reaffirmed the rule that: "In the division of property and allowance of alimony in a divorce action, the court, in the exercise of judicial discretion, should consider the estate of the parties, if any, at the time of the marriage and their contributions since; the duration of the marriage; the wife's loss of interest in the husband's property by virtue of the divorce; the social standing, comforts, and luxuries of life which the wife would probably have enjoyed; the conduct of the parties leading up to the divorce; to which party the divorce was granted; the age, condition of health, and earning ability of the parties; and all other relevant facts and circumstances; and make such an award as appears to be fair and equitable." Pasko v. Trela, 153 Neb. 759, 46 N. W. 2d 139.

In that connection, Mangiameli v. Mangiameli, 153 Neb. 753, 45 N. W. 2d 910, relied upon by plaintiff to sustain a life use of the home awarded to her, is distin-

. guishable from the case at bar with particular reference to the age, physical condition, and income-producing capacity of the respective parties.

In the light of the foregoing rules, we have examined the record. The parties were married September 9, 1933. During the 17 years of their marriage, they had four children, two boys and two girls. The eldest was a boy 15 years old. He earned a little money caddying on week ends. The second was a girl 13 years old. The third was a girl 11 years old. The fourth was a boy 7 years old, who was not in robust health and required periodic medical care.

Plaintiff, 37 years old, was a thrifty housewife, otherwise unemployed during the marriage. At time of trial she was in good health, earning $32.50 a week inspecting invoices in a cleaning establishment. Without dispute she was a good mother and a fit and proper person to have the care, custody, and control of the children awarded to her by the decree.

Defendant, 46 years old and in good health, was a casing butcher employed by a packing company earning $3,400 or more last year. The evidence relating to his extreme cruelty will not be repeated. It is sufficient for us to say that plaintiff was clearly entitled to an absolute divorce.

During the marriage, by joint efforts of the parties they had accumulated furniture, household goods, and personal property located in their home, hereinafter discussed. The value of such property was not definitely established by the evidence. The decree gave all of such furniture, household goods, and personal property to plaintiff absolutely. We sustain such disposition.

They had also acquired a $500 joint savings account, fostered and preserved by plaintiff, which she withdrew after the separation and expended $200 thereof, leaving $300 intact. Likewise, they had acquired a $50 Series E government bond. The decree divided the aforesaid $300 and bond equally between the parties. We con-

clude that the court should have awarded all of both to plaintiff absolutely. They are so awarded.

Also, the parties purchased during the marriage three unimproved lots in the name of defendant for $100 at a tax foreclosure sale. At time of trial they were worth about $1,200. The decree divided that property equally between the parties, to be free of liens for child support in order to facilitate their sale without further order of court. We conclude that the court should have so awarded all of such property to defendant. It is so awarded.

In 1942 they acquired a home, known as 5123 South 41st Street, Omaha, in which they subsequently lived. Title was taken in the name of both parties. The purchase price was $2,100. They paid $300 down and gave a mortgage back for the balance. Thereafter, out of defendant's income and with assistance of $400 inherited by him, such home was improved somewhat and cleared of debt by January 1945. However, they thereafter again mortgaged the same for $1,000, with which they substantially improved the property. Of that amount $828, payable $10 monthly, remained unpaid at time of trial. The home, a story and one-half, seven-room modern frame house, in which they then had an investment of about $3,500, was worth about $7,000 at time of trial. The decree divided such home property equally between the parties, subject, however, to the right of plaintiff to use and occupy the same and receive all rents therefrom during her lifetime for herself and the children, whose custody was awarded to plaintiff, together with $20 a week to be paid by defendant as child support. The decree also provided that each party should pay one-half of the mortgage debt, taxes, insurance, and upkeep of the property. The order for child support payments as made will not be disturbed at this time. However, with regard to the home, we conclude that the decree should be and hereby is modified as hereinafter set forth.

In that connection, the duty of defendant to adequately provide for his children still exists, but it is the duty of courts to fairly and justly enforce it. An allowance of $20 a week for the support of four young children in these times will scarcely provide food for them, much less education, clothing, shelter, and other necessities. The mother, who sought no alimony as such for herself, is the innocent spouse, now confronted with the entire responsibility for their parental supervision, thrust upon her by an irresponsible father, who, the record discloses, had concededly failed to pay one week of temporary child support because he needed the money to take a fishing trip, and for reasons not satisfactorily explained had failed to pay all of the temporary allowances for attorney fees and suit money. Thus, a just division of the home property between the parties is distinct, but the use of it is complicated by the necessity of compelling defendant to support and shelter the innocent children so long as it is used by plaintiff as a parental home, and any child unmarried and under 21 years of age survives.

Viewed in that light, we have concluded that such home should and shall remain in the names of the parties equally, but as tenants in common, subject, however, to the absolute right of plaintiff to exclusively use, occupy, and possess the property as a home for herself and the children during such time as she survives and lives there with a child or children, until the youngest then surviving is married or 21 years of age. Should plaintiff no longer exercise her exclusive right to use, occupy, and possess the property as a parental home as aforesaid, or in the event that all the then surviving children should be married or 21 years of age, then or in either event plaintiff's right to exclusively use, occupy, and possess the property, shall be terminated. Otherwise, however, it shall be and remain in full force and effect.

In that connection, it is further understood and here-

by ordered, however, that during all the period of plaintiff's exclusive right to use, occupy, and possess the property as aforesaid, she shall be obligated to pay for all such physical maintenance and upkeep of the property as in her judgment may be required in order to make it livable as a home for herself and the children.

On the other hand, defendant shall *in any event* be obligated and required to pay each and all of the remaining monthly payments and interest upon the real estate mortgage on said property, both accrued and accruing on and after August 18, 1950, *until the mortgage is paid in full.* During the existence of plaintiff's possessory rights aforesaid, defendant shall pay all real estate taxes both accrued and accruing on said property on and after August 18, 1950, and also during such period he shall keep the property adequately insured at all times and pay each and all insurance premiums thereby both accrued and accruing on and after August 18, 1950.

Further, each and all of such obligations heretofore imposed upon defendant, including the provisions for payment of $20 weekly as child support, which are unpaid by defendant when due, shall each and all, in addition to all other remedies provided by law, then forthwith become and remain a continuing first lien or liens upon and against defendant's interest in such property for the benefit of plaintiff and the children respectively, or the survivor of them.

Except as heretofore modified, the judgment should be and hereby is affirmed with all costs taxed to defendant, including an allowance to plaintiff of $150 for her attorney as fees for services rendered in this court.

AFFIRMED AS MODIFIED.