630 P.2d 1243

**Jane Ann CHURCH, Plaintiff-Appellant,**

v.

**David Harlan CHURCH,
Defendant-Appellee.**

No. 4934.

Court of Appeals of New Mexico.

June 19, 1981.

Kathryn M. Wissel, Menig, Sager, Curran & Sturges, P. C., Albuquerque, for plaintiff-appellant.

Kenneth C. Leach, Popejoy, Leach & Silko, P. C., Albuquerque, for defendant-appellee.

## OPINION

WOOD, Judge.

Plaintiff, wife, sued defendant, husband, for either legal damages or equitable relief on the basis of dealings between the parties while residing in Virginia. We identify the alleged factual basis for the claims in discussing the various issues. The trial court ruled there was a failure to state a claim upon which relief could be granted and dismissed plaintiff's amended complaint with prejudice. She appeals. We discuss: 1. the claims made; 2. the basis for dismissal; 3. the substantive law applicable; 4. defendant's "no basis" for relief contentions; and 5. elements of plaintiff's claims for which relief can be granted.

### 1. The Claims Made

Plaintiff's initial complaint sought to recover damages for fraud. The trial court dismissed this complaint on the basis that Virginia law applied and that Virginia law did not permit such a suit between spouses. Plaintiff was permitted to file an amended complaint. The amended complaint makes three claims—for fraud, for breach of contract, and for unjust enrichment. The trial court dismissed the amended complaint for failure to state a claim upon which relief could be granted. We do not know the basis for this dismissal.

Common to each of the claims is that plaintiff was employed and defendant was attending medical school.

The fraud claim is: (a) By agreement, defendant pursued his medical studies and plaintiff worked to support plaintiff and defendant, and pay defendant's educational expenses. (b) In the second year of medical school, defendant began an extramarital relationship which continued through the fourth year of medical school. (c) Defendant knew that if he revealed his extramarital relationship his marriage with plaintiff would probably end. (d) Defendant did not intend to continue his marital relationship with plaintiff once his medical studies were completed. (e) For the purpose of inducing plaintiff to continue the marital relationship and to continue supporting him until his medical studies were complete, "Defendant fraudulently concealed the existence of this extramarital relationship and continued to represent his medical education as an investment of the marriage . . . ." (f) Plaintiff, unaware of defendant's extramarital relationship "continued to provide financial and emotional support to Defendant for his medical studies, relying upon Defendant's false representation that Plaintiff and Defendant as husband and wife would share the benefits of his medical education." (g) Upon completing his fourth year

of medical school, defendant advised plaintiff of his desire for a divorce.

The contract claim is: (a) An oral contract was entered in Virginia approximately September, 1975. (b) Plaintiff was to furnish to defendant, from plaintiff's earnings, "all or a substantial part of the expenses of his medical education and his support and maintenance while pursuing same, so that it would not be necessary for him to borrow any money to finance his medical education." (c) In exchange, defendant promised plaintiff a one-half interest in defendant's increased earning capacity resulting from his medical education. (d) Plaintiff performed her part of the agreement. (e) Upon completing medical school, defendant refused to perform his part of the agreement and denies that plaintiff has any interest in defendant's earning capacity.

The unjust enrichment claim is that defendant obtained plaintiff's financial contributions toward defendant's support and medical education, and other services rendered by plaintiff to defendant, in a manner which is inequitable and, at a minimum, there should be restitution of the value of these services.

Damages were sought in connection with each of the claims.

Defendant asserts that Virginia law applies to these claims, but does not contend that fraud, breach of contract or equitable relief are not remedies in Virginia. See *Mears v. Accomac Banking Co.*, 160 Va. 311, 168 S.E. 740 (1933); *Greenbrier Farms v. Clarke*, 193 Va. 891, 71 S.E.2d 167 (1952); and *Leonard v. Town of Waynesboro*, 169 Va. 376, 193 S.E. 503 (1937). Nor does defendant contend that these remedies are *never* available, in Virginia, in suits involving the spousal relationship. *Humphreys v. Baird*, 197 Va. 667, 90 S.E.2d 796 (1956); *Vigilant Insurance Company v. Bennett*, 197 Va. 216, 89 S.E.2d 69 (1955); *Capps v. Capps*, 216 Va. 378, 219 S.E.2d 901 (1975); *Sundin v. Klein*, Va., 269 S.E.2d 787 (1980). Defendant's theories of "no basis for relief" are discussed hereinafter. Our reference to theories of relief is for the purpose of eliminating these general concepts from our dis-

cussion because defendant does not defend the trial court's dismissal on the ground that these concepts are not a basis for relief.

Cases concerned with the wife obtaining her "Ph.T." (putting hubby through school) are no longer uncommon. Erickson, *Spousal Support Toward the Realization of Educational Goals: How the Law Can Ensure Reciprocity*, 1978 Wisconsin L.Rev. 947, footnote 4. This fact situation and the resultant disputed claims have been resolved in terms of property or alimony awards in divorce proceedings. As examples, see *In re Marriage of Graham*, 194 Colo. 429, 574 P.2d 75 (1978); *In re Marriage of Horstmann*, 263 N.W.2d 885 (Iowa 1978); *Prosser v. Prosser*, 156 Neb. 629, 57 N.W.2d 173 (1953); *Hubbard v. Hubbard*, 603 P.2d 747 (Okl.1979).

The pleadings refer to a divorce action pending between the parties to this suit; at oral argument, counsel informed us that the divorce action was in New Mexico and that it had been tried. We are informed that judgment was entered in the divorce case after oral argument in this case, and that the divorce case will probably be appealed. Plaintiff maintains that her claims are not dependent upon a divorce proceeding and may be brought as independent claims.

### 2. The Basis for Dismissal

■ This being a New Mexico suit, our procedural law applies to the dismissal of plaintiff's claims. See *Satterwhite v. Stolz*, 79 N.M. 320, 442 P.2d 810 (Ct.App.1968).

Rule of Civ.Proc. 12(b)(6) authorizes a motion to dismiss for failure to state a claim upon which relief can be granted. In considering the propriety of such a dismissal we accept, as true, all well pleaded facts. The motion is properly granted only when it appears that plaintiff is not entitled to relief under any state of facts provable under the claim made. *Burke v. Permian Ford-Lincoln-Mercury*, 95 N.M. 314, 621 P.2d 1119 (1981).

This procedural basis for dismissal, in this case, involves a substantive law question.

What state's law is to be applied in determining whether there can be relief under any facts provable under the claims made?

### 3. The Substantive Law Applicable

New Mexico permits suits between spouses based on tort. *Maestas v. Overton*, 87 N.M. 213, 531 P.2d 947 (1975); *Flores v. Flores*, 84 N.M. 601, 506 P.2d 345 (Ct.App. 1973). Virginia places restrictions on such suits. *Counts v. Counts*, 221 Va. 151, 266 S.E.2d 895 (1980); *Korman v. Carpenter*, 216 Va. 86, 216 S.E.2d 195 (1975). One of defendant's claims is that plaintiff's suit is barred by interspousal immunity. That question is eliminated from the appeal if New Mexico's substantive law applies.

Each party to a marriage in New Mexico has the duty of support. Section 40–2–1, N.M.S.A.1978. An issue is whether, in Virginia, a wife has a duty to support her husband. That question is eliminated from the appeal if New Mexico's substantive law applies.

New Mexico decisions as to choice of law are to the effect that Virginia's substantive law applies. As to the tort of fraud, see *Zamora v. Smalley*, 68 N.M. 45, 358 P.2d 362 (1961); *First Nat. Bank in Albuquerque v. Benson*, 89 N.M. 481, 553 P.2d 1288 (Ct.App.1976). As to the contract claim, see *Boggs v. Anderson*, 72 N.M. 136, 381 P.2d 419 (1963); *Sandoval v. Valdez*, 91 N.M. 705, 580 P.2d 131 (Ct.App.1978). As to choice of law for the unjust enrichment claim, neither party suggests it should be decided under New Mexico's substantive law.

The choice of law question is whether the public policy of New Mexico requires the application of New Mexico's substantive law. This question arises because the parties, while married, seek the resolution of interspousal claims in New Mexico. The events on which the suit are based took place in Virginia at a time the parties resided there. Although the fact of marriage is inextricably involved, the essence of plaintiff's claims is directed to property rights. New Mexico is involved in a resolution of the matter only because the parties became residents of New Mexico after defendant completed medical school. In summary, New Mexico became the forum for this lawsuit solely by the fortuity of New Mexico employment after the operative events had taken place. These facts sufficiently distinguish *Scanlon v. Scanlon*, 60 N.M. 43, 287 P.2d 238 (1955), and *Sandoval v. Valdez*, supra, so that the public policy discussion in those cases is not applicable. In the circumstances, the public policy of New Mexico does not require the application of New Mexico's substantive law to the claims made. Virginia's substantive law applies.

### 4. Defendant's "No Basis For Relief" Contention

(a)  Failure to State a Claim

Defendant asserts the fraud claim fails to state a claim because

[i]n essence, it is alleged that Dr. Church misrepresented the status of his medical degree under the law, that it would be a community asset and shared in the future by all parties. At most, this representation can be characterized as a misrepresentation of law. Misrepresentations of law are not a sufficient basis for fraud and deceit.

This contention is factually inaccurate. Plaintiff does not claim an interest in defendant's medical degree, and does not claim any misrepresentation as to the status of that degree. Plaintiff's claim is that defendant obtained financial and emotional support by the false representation that the parties would share the "benefits," that is, the increased earnings resulting from defendant's medical education. We consider the emotional support claim subsequently. The part of the claim considered here is that defendant obtained financial support through false representation.

Whether the alleged false representation to share in future earnings is a representation of fact or a representation of law need not be decided. During the time of this representation, the parties, married, occupied a relation of trust and confidence toward one another and were bound to act

fairly and in good faith in their dealings. In this situation, the obtaining of defendant's money by a false statement was actionable even if a representation of law. *Humphreys v. Baird*, supra.

Defendant argues that his promise, if false, was not actionable because it was no more than an expression of opinion. Defendant cites *Soble v. Herman*, 175 Va. 489, 9 S.E.2d 459 (1940), which states a general rule that fraud must relate to a present or pre-existing fact and cannot be based on a promise as to future events. The reason, according to the opinion, is that:

[A] mere promise to perform an act in the future is not, in a legal sense, a representation, and a failure to perform it does not change its character. The very nature of a promise to do something in the future is such that its truth or falsity, *as a general rule*, cannot be determined at the time it is made. (Our emphasis.)

Immediately following the above quotation, the Virginia court defines actual fraud to be intentional fraud, consisting of deception intentionally practiced to induce another to part with property, and states that if a promise is accompanied by indicia of fraud, then the promise is not allowed to defeat the claim of the defrauded party. Plaintiff's claim is that defendant obtained financial support from plaintiff by a continuing representation that he knew to be false during the time he made the representation. We view the problem as to the fraud claim to be one of proof (indicia of fraud, falsity at the time the representation was made) at trial; however, a claim for relief was stated.

### (b) Absence of Damages

Citing Prosser, Law of Torts, § 110 (4th ed. 1971), and assuming Virginia law is as stated in *Prosser*, defendant claims that plaintiff's fraud claim fails to state a basis for relief because there must be substantial damage for there to be a basis for relief. Defendant argues, as a matter of law, that plaintiff did not suffer substantial damage. We discuss this claim in issue 5(d).

### (c) Interspousal Tort Immunity

Defendant contends the fraud claim is barred by the doctrine of interspousal tort immunity. The extent of this doctrine has been repeatedly litigated in Virginia; the issues, generally, were whether either statutes or public policy required modification of the common law rule of interspousal immunity. See *Counts v. Counts*, supra; *Keister's Adm'r v. Keister's Ex'rs*, 123 Va. 157, 96 S.E. 315 (1918). We are not concerned with Virginia's rationale or the sometimes strange results, at least to New Mexicans. See Note, *Intrafamily Tort Immunity in Virginia: A Doctrine in Decline*, 21 Wm. & Mary L.Rev. 273 (1979–80). Our concern is whether plaintiff's fraud claim is barred by the Virginia doctrine.

*Vigilant Insurance Company v. Bennett*, supra, held that certain statutory provisions "empower each spouse to maintain actions at law for wrongful invasions of their respective property rights as if they had never been married." The statutes are §§ 55–35, 55–36 and 55–37, Va.Code 1950 (1974 Repl. Vol. 8). Section 55–35 states:

A married woman shall have the right to acquire, hold, use, control and dispose of property as if she were unmarried and such power of use, control and disposition shall apply to all property of a married woman which has been acquired by her since April four, eighteen hundred and seventy-seven, or shall be hereafter acquired.

*Vigilant Insurance Company* states that § 55–35 gives the wife full ownership and control of her property, including her choses in action, and provides the substantive right to a wife to sue her husband for tortious damage to her property.

Defendant recognizes that plaintiff has a right to sue her husband on a property claim, but asserts that no property is involved in plaintiff's claims. Defendant likens plaintiff's fraud claim to a suit for personal injury, defamation, malicious prosecution or false imprisonment; such suits are prohibited by the Virginia interspousal immunity rule. *Vigilant Insurance Company v. Bennett*, supra, cites an early edition

of Prosser, Law of Torts, where, in discussing the effect of the Married Woman's Acts, fraud is listed as one of the torts against property interests for which a wife may sue her husband. At oral argument defendant asserted that the interspousal immunity rule applies to intentional torts; the Virginia decisions do not determine the right of a wife to sue for a property tort on the basis of whether the tort is negligent or intentional.

■■ Under Virginia law, a wife may sue her husband for fraud as to her property interests. *Vigilant Insurance Company v. Bennett*, supra. The parties agreed, at oral argument, that, in Virginia, a wife's earnings are her separate property. See *Harris v. Carver*, 139 Va. 676, 124 S.E. 206 (1924). The fraud claim asserts that plaintiff "worked" to support plaintiff and defendant, and to pay defendant's educational expenses. This sufficiently alleges that plaintiff used her earnings for defendant's support and education, and that these earnings were obtained by defendant through fraud. Virginia's interspousal immunity rule does not bar plaintiff's fraud claim.

(d)  Virginia's Public Policy

■ Defendant contends that the fraud claim is "void" because of the public policy of Virginia. The public policy is either "preservation of marriage" or "against promoting marital disharmony." Defendant's argument is based on public policy discussion in interspousal personal tort cases, see *Counts v. Counts*, supra, as an example. Those cases set forth Virginia's explanation of why suits between spouses for personal torts are not permitted. Defendant's argument overlooks the public policy, stated in Virginia statutes, that spouses may sue one another for torts to a spouse's property. See § 55–35, supra, and *Vigilant Insurance Company v. Bennett*, supra. Defendant's argument is based on a public policy not applicable to property interest suits, and is without merit.

(e)  Breach of Contract

Defendant states the alleged contract was for the wife "to furnish from her earnings all or a substantial part of the expenses of his medical education and his support and maintenance while pursuing his medical education and in consideration thereof Mrs. Church was to receive an interest in Dr. Church's increased earning capacity which he would receive as a result of his medical education." Defendant asserts that a contract of this type is void for lack of consideration or against public policy. This involves the elements of plaintiff's claims, and is discussed in 5(b) and (c).

(f)  Independent Claim

■ Defendant contends that plaintiff's claims should not be considered independently of the divorce action. We understand defendant's argument to be that the adjustment of property rights, between spouses, properly occurs in actions either for divorce or for maintenance; but not independently of such actions. Defendant's reasoning, if we understand it correctly, is that Virginia's public policy of preserving marriage forbids suits based on property interests unless the marriage is coming to an end through divorce, or has deteriorated to such an extent that there is an action for support and maintenance.

Virginia, by § 55–35, supra, permits suits between spouses, based on property interests, as if they had never been married. *Vigilant Insurance Company v. Bennett*, supra. This statutory authorization is not dependent upon a divorce or a support and maintenance proceeding. Virginia has permitted suits between husband and wife which involved their property interests. *De Baun's Ex'x v. De Baun*, 119 Va. 85, 89 S.E. 239 (1916), states that a wife can sue her husband for money she loaned to him. *Humphreys v. Strong*, 141 Va. 146, 126 S.E. 194 (1925), states that a wife could sue in ejectment to recover possession of property he had given her; "As to her property rights during the coverture, they are as strangers." *Klotz v. Klotz*, 202 Va. 393, 117 S.E.2d 650 (1961), was a suit for dissolution

of the business partnership between husband and wife. The two *Capps v. Capps* suits illustrate that actions involving marital affairs are separate from property affairs. *Capps I*, 216 Va. 382, 219 S.E.2d 898 (1975), held that neither spouse was entitled to a divorce. *Capps II*, supra, considered the validity of an agreement between the spouses as to certain real property.

The foregoing Virginia authority is to the effect that the disposition of property disputes, between spouses, is not tied to divorce or maintenance proceedings. In the absence of the foregoing authority, we would not hold that the resolution of property disputes are tied to proceedings involving divorce or maintenance unless Virginia authority required such a result. Our point is that plaintiff claims a right to damages or equitable relief. The resolution of property disputes as a part of divorce or maintenance proceedings, which resolution involves the discretion of the trial court, is not a resolution of property disputes *as of right*. See § 20–107, Va.Code 1950 (1975 Repl. Vol. 4A, 1980 Supp.). The distinction between the right to relief and discretionary relief is aptly discussed in *Erickson*, supra.

### 5. Elements of Plaintiff's Claims

The elements of plaintiff's claims are discussed in this issue.

#### (a) Services as a Wife

Part of plaintiff's claims are based on her services during the time defendant attended medical school; the amended complaint refers to this aspect as "emotional support to Defendant for his medical studies" and "services to Defendant as a housewife."

■ Under Virginia law a wife has a duty to provide household services to her husband and the husband has a duty to support his wife. *Hall v. Stewart*, 135 Va. 384, 116 S.E. 469 (1923). The concurring opinion of Judge Burks in *Keister's Adm'r v. Keister's Ex'rs*, supra, states:

It is the duty of the husband to support his wife and to shield, defend, and protect her in every way possible. It is the duty

of the wife to reverence her husband, and to serve him. These duties grow out of the mere act of marriage. The husband may not present a bill against his wife for board and clothing, nor the wife present to her husband a bill for presiding over the household. The law will not imply a contract to pay such bills.

*Keister* is cited with approval in later cases. See *Korman v. Carpenter*, supra; *Furey v. Furey*, 193 Va. 727, 71 S.E.2d 191 (1952).

■ Having a duty to provide the services of a wife, those services are not a basis for relief for fraud, or breach of contract, or for an equitable award based on unjust enrichment. Compare *Hurley v. Hurley*, 94 N.M. 641, 615 P.2d 256 (1980).

#### (b) Support

Defendant seems to contend that a part of plaintiff's claim for providing financial support is based on plaintiff supporting herself while defendant attended medical school. This argument takes one phrase in the fraud claim out of context. Plaintiff's "providing financial support" assertion under each of the three general claims is that plaintiff supported defendant while defendant attended medical school. Plaintiff contends either that defendant obtained this support by fraud, or that the support she provided for defendant was consideration for the contract, or that under the circumstances it was inequitable for defendant to have obtained this support.

■ (1) Defendant contends that the support he received from his wife is to be treated no differently than the claim based on the services of a wife; that a wife has a duty to support her husband. Because of this asserted duty, defendant's position is that the support he received provides no consideration for the alleged contract and, apart from contract "consideration," provides no basis for a recovery under any of the three general claims.

Defendant does not claim that a wife had a duty to support her husband at common law. See *Eaton v. Davis*, 176 Va. 330, 10 S.E.2d 893 (1940); *Keister's Adm'r v. Keister's Ex'rs*, supra.

Defendant contends that § 20–61, Va. Code 1950 (1975 Repl. Vol. 4A, 1980 Supp.), requires each spouse to support the other. That statute provides, in part, that "[a]ny spouse who without cause . . . fails to provide for the support and maintenance of his or her spouse . . . shall be guilty of a misdemeanor . . . ." *Heflin v. Heflin*, 177 Va. 385, 14 S.E.2d 317 (1941), held that this statute did not provide a civil remedy, but was limited to criminal proceedings. Section 20–61, supra, not providing a civil remedy, did not impose an obligation for a wife to support her husband. See opinion of Judge Sims in *Keister's Adm'r v. Keister's Ex'rs*, supra.

(2) At oral argument, defendant asserted that a wife had a duty to support as a result of § 20–107, supra. This argument involved two steps. First, that under § 20–107, supra, a husband could obtain support and maintenance (formerly called alimony) from his wife. Second, that alimony was a continuation of the duty of support, see *Eaton v. Davis*, supra. Because a husband might obtain support and maintenance from his wife, defendant asserts a duty on the wife to support the husband during coverture. The fallacy of this argument is that § 20–107, supra, does not provide a "right" to support; under that statute support and maintenance is determined after consideration of the statutory factors therein stated and, ultimately, is a matter of what is required for an equitable solution in a particular case. Holt, *Support v. Alimony in Virginia: It's Time to Use the Revised Statutes*, 12 U. of Rich.L.Rev. 139 (1977–78).

Plaintiff's financial support contentions are not barred on the basis that the wife had a duty to support her husband.

■ (3) The right to support is not a property right. *Eaton v. Davis*, supra. Defendant contends: "Plaintiff's suit is not an invasion of her property rights for she is seeking return of money spent for support of her husband." This argument is specious, being based on a distortion of concepts. No right, or duty, to support is involved in plaintiff's claims; rather, plaintiff's "providing financial support" claims state a basis for relief because the wife had no duty to support. Because she did financially support her husband from her separate property, that support provides a basis for relief if the support was obtained by fraud, by contract, or in circumstances for which there may be equitable relief.

### (c) Cost of Medical Education

■ Traditionally, the amount of an alimony or support award has been determined by need, ability to pay and the "station in life" of the parties. *Eaton v. Davis*, supra. The cost of a medical education does not come within this traditional approach. See *Rosner v. Rosner*, 202 Misc. 293, 108 N.Y.S.2d 196 (Fam.Ct.1951) where a Domestic Relations Court in New York stated that there was no legal obligation on the part of a husband to provide the funds required by his wife to attain a medical education. Thus, traditionally, the funds provided by a wife to pay for her husband's medical education would be considered an item separate from funds provided for his support. Educational funds supplied by a wife would provide a basis for relief if those funds were obtained by fraud, by contract or in circumstances for which there may be equitable relief.

This case being governed by Virginia's substantive law, a distinction between money for support and money for educational costs need not be made. The statutory factors set forth in § 20–107, supra, to be considered for support and maintenance, include the monetary contributions of a party to the well-being of the family. This would include contributions for traditional support and educational costs. Inasmuch as these contributions can be considered in an action under § 20–107, supra, they may also be considered in an independent action, such as this cause.

### (d) Damages

■ Inasmuch as the trial court dismissed the amended complaint for failure to state a claim upon which relief could be granted, we consider damages only to the

extent they are necessary to state a claim for relief. We do not consider the extent of the damages that may be recovered, or. the extent of any equitable relief. Defendant's contention, identified in issue 4(b), is that plaintiff cannot obtain relief for fraud in the absence of substantial damage. The complaint asserts that $20,000 of her earnings were used "to provide Defendant the costs of his medical education". That is substantial damage which, as a minimum, is recoverable under each of the three theories asserted.

*Conclusion*

█ We emphasize that the issue decided is whether plaintiff has stated a claim for which relief can be granted under the substantive law of Virginia. Defenses to plaintiff's claims and any impact the divorce trial and judgment may have on plaintiff's claims have not been considered. We hold that a claim for relief has been stated under fraud, breach of contract and unjust enrichment on the basis of plaintiff's separate funds obtained by defendant for his support and medical education.

█ Defendant contends that his attorney fees should be awarded to him as damages, see § 39–3–27, N.M.S.A.1978 and R.Civ.App. Proc. 20, on the basis that plaintiff's appeal was frivolous and not in good faith. Our discussion of the issues and the decision reached demonstrates that defendant's contention is frivolous; plaintiff's appeal was not frivolous.

The order dismissing the amended complaint is reversed; the cause is remanded with instructions to reinstate the amended complaint on the docket and to proceed consistent with the views expressed in this opinion.

Plaintiff is to recover her appellate costs.

IT IS SO ORDERED.

HERNANDEZ, C. J., and LOPEZ, J., concur.